Filed 12/3/15  P. v. Walker CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061663 |
| v. | (Super.Ct.No. RIF1303820) |
| JAMES WALKER, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard Todd Fields, Judge.  Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant and appellant, James Walker, sexually abused his stepdaughter for a period of approximately three years.  A jury convicted defendant of (1) 24 counts of rape of a child under 14 years of age and more than seven years younger than defendant (Pen. Code, § 269, subd. (a)(1)), (2) 24 counts of oral copulation by force or violence on a child under 14 years of age and more than seven years younger than defendant (Pen. Code, § 269, subd. (a)(4)), (3) two counts of sodomy by force or violence on a child under 14 years of age and more than seven years younger than defendant (Pen. Code, § 269, subd. (a)(3)), and (4) one count of simple assault (Pen. Code, § 240).  The trial court sentenced defendant to 390 years to life in state prison.

On appeal, defendant argues that the trial court prejudicially erred in admitting into evidence defendant's statement to police, which defendant contends was obtained in violation of his *Miranda*[1] and due process rights.  We hold that defendant knowingly, intelligently and voluntarily waived his *Miranda* rights.  We further hold that defendant's statements to police, including his confession, were made voluntarily and did not violate his due process rights.

# II.  STATEMENT OF FACTS

A.  *Defendant's Sexual Assault and Subsequent Arrest*

From approximately September 2006 through September 2009, defendant repeatedly sexually abused the victim, his stepdaughter.  Defendant's actions were known

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

only to defendant and the victim until January 2010, when defendant gave money to the victim's friend to purchase undergarments. This incident involving victim's friend was reported to defendant's wife. When confronted by his wife, defendant admitted the incident with the victim's friend and further confessed his sexual abuse of the victim. Despite this admission, and despite defendant's subsequent incidents of sexual abuse of the victim, defendant's wife did not report defendant's actions to the authorities.

On May 4, 2013, defendant again sexually assaulted the victim. This time, defendant's wife called the police and defendant was arrested.

B. *Interrogation of Defendant*

On May 4, 2013, and shortly after his arrest, defendant was taken to the Riverside Police Department, where he was interrogated by a detective. The interrogation was both videotaped[2] and audio recorded. After defendant was read and waived his *Miranda* rights, he confessed to his sexual abuse of the victim.

C. *Motion to Suppress*

Prior to trial, defendant moved to suppress his confession on the grounds that (1) his *Miranda* waiver had been obtained through coercion, (2) his postwaiver statements had been obtained through coercion, and (3) his statements had been obtained after

---

[2] The court has watched the videotape of the interrogation in its entirety. Our impression is that the interrogation was nonhostile in nature, as the defendant was not restrained in handcuffs and as the detective and defendant both spoke calmly throughout the interrogation. At no point during the interrogation did the detective speak or act in a threatening manner.

defendant had invoked his *Miranda* right to counsel.  At the suppression hearing, the court viewed the videotape of defendant's interrogation.

The trial court ruled that defendant's *Miranda* waiver was not coerced.  The court further found that defendant had been given, understood, and knowingly and voluntarily waived his *Miranda* rights.  The court also ruled that defendant did not invoke his right to counsel.  Lastly, the court found that defendant made his statements voluntarily and that the statements were not the product of coercion.  On these bases, the court denied defendant's pretrial motion to suppress the statements he made to the detective.

### III.  DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress his statements because the statements were obtained in violation of his *Miranda* and due process rights.  For the reasons we explain, we disagree.

A.  *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress based upon a violation of *Miranda,* this court "'''"accept[s] the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence."'''" (*People v. Dykes* (2009) 46 Cal.4th 731, 751.)  "Ultimately, the question becomes whether the *Miranda* waiver is shown by a preponderance of the evidence to be voluntary, knowing and intelligent under the totality of the circumstances surrounding the interrogation." (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 219.)  This court further "'independently determine[s] from the undisputed facts and the facts properly

4

found by the trial court whether the challenged statement was illegally obtained.'"
(*People v. Gamache* (2010) 48 Cal.4th 347, 385.)

Furthermore, the determination of a trial court as to the ultimate issue of the voluntariness of a confession is reviewed independently in light of the record in its entirety, including all the surrounding circumstances, including the details of the interrogation. (*People v. Benson* (1990) 52 Cal.3d 754, 779.)

B. *Defendant Waived His Miranda Rights*

When a defendant responds "yes" as to whether he understood the *Miranda* warnings, and then continues to speak to the interrogating officers, a valid *Miranda* waiver has occurred. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1268-1269.) Here, the detective read defendant his *Miranda* rights. Defendant responded "[y]es" when asked by the detective whether he understood each of the advisements. By doing so, defendant waived his *Miranda* rights.

C. *Defendant's Miranda Waiver Was Knowing, Intelligent, and Voluntary*

Defendant claims his *Miranda* waiver was coerced and involuntary. We disagree.

A *Miranda* waiver is voluntary if, under the totality of circumstances, it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. (*People v. Williams* (2010) 49 Cal.4th 405, 425.) Pre-*Miranda* statements by police that are "unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will" do not make a subsequent waiver involuntary. (*People v. Wash* (1993) 6 Cal.4th 215, 240-241.)

5

Advising a suspect that it would be better to tell the truth, when unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary. (*People v. Davis* (2009) 46 Cal.4th 539, 600.)  Informing a suspect that his cooperation would be communicated to the district attorney does not constitute a promise of leniency. (*People v. Boyde* (1988) 46 Cal.3d 212, 239; *People v. Ramos* (2004) 121 Cal.App.4th 1194, 1203-1204.)

Referring to a defendant's religious beliefs is similarly permissible unless there is evidence that the police exploited a particular psychological vulnerability of the defendant.  (*People v. Kelly* (1990) 51 Cal.3d 931, 951-954.)  In *Kelly*, the court found that, based on the totality of the circumstances, a detective's invocation of the defendant's Christian upbringing, along with a suggestion that the crimes were in conflict with that upbringing, did not exploit the defendant's psychological vulnerabilities so as to render his confession involuntary.  (*Ibid*.)

Here, prior to reading defendant his *Miranda* rights, the detective made several comments to defendant.  Specifically, the detective and defendant had the following exchange:

"[DETECTIVE]:  . . . I just spoke to [defendant's wife] at length, talked about a lot of past conversations the two of you have had.  We've talked to [the victim].  We even talked to [the victim's friend].  So there are some things that—that I think you're gonna need to get off your chest.  And I think you're gonna feel a lot with—about it when you do.  If you cooperate with me I will make sure to relay that to the District Attorney's

6

Office.  I will do everything I can to, you know, get you through this process.  But if you choose to be uncooperative I have to relay that—relay all that information to them too.

"[DEFENDANT]:  Right.

"[DETECTIVE]:  You know it's very hard to have any kind of sympathy for a person who does not feel remorseful for what they've done.

"[DEFENDANT]:  Right.

"[DETECTIVE]:  And from what I understand you're very involved in your church.  You're a God fearing man and from a lot of the [Church of Jesus Christ of Latter-day Saints] individuals that I've grown up with they usually take responsibility for the things that they've done.  And I—I have a lot of admiration for that and I respect that.  And I hope it doesn't end with you okay?  But right now you're not free to leave.

"[DEFENDANT]:  I understand that."

The statements made by the detective simply urged defendant to be honest and to take responsibility for his actions.  Here, as in *Boyde* and *Ramos*, the detective informed defendant that he would let the district attorney know that defendant had been cooperative, but the detective made no promises of leniency.  Furthermore, similar to *Kelly*, there was no indication that defendant had any anxieties or vulnerabilities regarding his religious beliefs.  Thus, the record does not support defendant's claim that the detective's remarks regarding defendant's religion were calculated to exploit any anxieties or vulnerabilities regarding his religious beliefs.  The substance of the detective's comment that members of the Church of Jesus Christ of Latter-day Saints

7

"usually take responsibility for the things that they've done" is simply an extension of his prior comment that defendant had "some things" that he "need[ed] to get off [his] chest." In other words, the detective's remarks simply urged defendant to tell the truth.

Based on the totality of the circumstances, defendant's *Miranda* waiver was voluntarily given.

D. *Defendant Was Not Denied the Right to Counsel*

Defendant next argues he was denied the right to counsel because he made an ambiguous invocation of the right to counsel that required the detective to clarify that ambiguity. We reject defendant's contention.

Subsequent to a valid *Miranda* waiver, "interrogation may proceed 'until and unless the suspect *clearly* requests an attorney.'" (*People v. Williams*, *supra*, 49 Cal.4th at p. 427.) This request for an attorney must be unequivocal and unambiguous. (*People v. Gonzalez* (2005) 34 Cal.4th 1111, 1125.) An inquiry as to whether a defendant should "'have somebody here talking for me'" does not constitute an unequivocal invocation of the right to counsel. (*People v. Cunningham* (2015) 61 Cal.4th 609, 645.) Officers may, but are not required to, seek clarification of ambiguous post-*Miranda* invocations for counsel before continuing substantive interrogation. (*People v. Cunningham*, *supra*, at p. 646; *People v. Williams*, *supra*, at p. 427.)

Here, and after he waived his *Miranda* rights, defendant asked the detective whether he should have a representative present during the interrogation. Specifically, defendant asked: "Am I doing myself any disservice by not having . . . [¶] . . . [¶] . . . a

8

representative. Because . . . I'm not in any way saying we're done or any—not at all. [¶] . . . [¶] I'm just asking myself am I doing myself a disservice." Since this statement was made after a *Miranda* waiver, defendant was required to make an unambiguous or unequivocal invocation of his right to counsel, which defendant admits he did not do. Defendant's inquiry whether he was doing himself a "disservice by not having . . . a representative" is analogous to the post-*Miranda* waiver inquiry in *Cunningham* of "[s]hould I have somebody here talking for me," which was a "vague question" that did not require the detective to cease the interrogation. Defendant's reliance on *People v. Duff* (2014) 58 Cal.4th 527 is misplaced because, unlike the facts here, that case involved a vague *prewaiver* reference to counsel that required the officer to clarify the suspect's intentions and desire to waive his or her *Miranda* rights. (*People v. Duff*, *supra*, at p. 553.)

Defendant was not denied his right to counsel and his equivocal postwaiver invocation of counsel did not require the detective to suspend the interrogation and clarify whether defendant wished to cease the interrogation.

E. *Defendant's Postwaiver Statements Were Voluntarily Made*

Defendant contends that his postwaiver statements were obtained through coercion and through promises of leniency and "tough talk." Not so.

1. Defendant Was Not Offered Leniency in Exchange for His Statements

A confession elicited by any promise of benefit or leniency, whether express or implied, is involuntary and therefore inadmissible. (*People v. Davis*, *supra*, 46 Cal.4th at

9

p. 600.)  However, merely advising a suspect that it would be better to tell the truth, when unaccompanied by either a threat of harm or a promise of benefits, does not render a confession involuntary.  (*People v. Holloway* (2004) 33 Cal.4th 96, 115.)  "'A statement is involuntary if it is not the product of "'a rational intellect and free will.'"  [Citation.] The test for determining whether a confession is voluntary is whether the defendant's "will was overborne at the time he confessed."  [Citation.]  "'The question posed by the due process clause in cases of claimed psychological coercion is whether the influences brought to bear upon the accused were "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined."  [Citation.]'  [Citation.]  In determining whether or not an accused's will was overborne, 'an examination must be made of "all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."  [Citation.]'  [Citation.]"  [Citation.]'"  (*People v. McWhorter* (2009) 47 Cal.4th 318, 346-347.)

Here, the detective implored defendant, on several occasions during the interrogation, to tell the complete truth.  He urged defendant to tell "the absolute truth about what happened," to "be honest and straightforward about this," "to tell me the truth about what happened," and "to do the right thing . . . to help your family."  Prior to the confession, the detective did not offer defendant leniency in exchange for a confession.

After he had confessed, defendant asked, "[w]hat can you do for me charges-wise . . . [¶] . . . [¶] . . . 'cause I laid it all out," to which the detective responded, "[a]h, I'm gonna charge you with everything you told me about.  You know, and we'll let the

10

[district attorney] decide what they can do.  I can't promise you, uh, I can't deal with you and trade with you and exchange favors with you."  The detective went on to state:  "I can't promise you anything right now.  The only thing I can promise you is that I can tell 'em 'Hey, [defendant's wife] was 100 percent honest with me, it looks like.  He owned it. . . .'"  Because the detective urged defendant to tell the truth without any threats of harm or promises of leniency, defendant's statements were voluntary.

    2.  <u>The Detective Did Not Make Threats or Promises Regarding Defendant's Family</u>

    Threats or promises relating to a defendant's relatives may render an admission invalid.  (*People v. Steger* (1976) 16 Cal.3d 539, 550; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1401.)  However, if there is no express or implied promise made by the police, a defendant's mere belief that his or her cooperation will benefit a relative does not invalidate an admission.  (*People v. Howard* (1988) 44 Cal.3d 375, 397-398; *In re Shawn D.* (1993) 20 Cal.App.4th 200, 209.)

    In *Howard*, the defendant claimed that the motivation for his confession was to avoid trouble for his son and girlfriend.  The court rejected this claim, finding that the police did not imply that the fate of the defendant's family depended upon his statements to police.  The court concluded that the police did not promise defendant that his family would be left alone if he confessed.  Rather, the officers informed defendant that, although they had released defendant's girlfriend, there was no guarantee they might not arrest her at some later point.  (*People v. Howard*, *supra*, 44 Cal.3d at pp. 397-398.)  The

11

court further explained that a police interview of defendant's son and girlfriend "was not an exercise designed to threaten defendant either expressly or impliedly that his loved ones' release was totally dependent upon his conduct and his confession. The two were important witnesses and the police were fully justified in exploring the facts with them." (*Id.* at pp. 398-399.)

Defendant asked the detective about defendant's wife, i.e., whether she was in any trouble, whether she would be arrested, and whether the children would be taken away from her. He expressed his hope that his wife would not be arrested and asked the detective whether any guarantees could be given to ensure that this would not happen. The detective advised defendant that: "The only guarantee I can give you is that if [Child Protective Services (CPS)], who is gonna come in and wanna talk to you for a few minutes afterwards also, is satisfied and I'm satisfied that she's being honest, she's puttin' everything out there on the table about what's happened in the past and she's gonna protect those girls, then we have no reason to feel that she's gonna be un-protective and to arrest her for anything else, you know?"

The detective stated that the only promise he could make regarding defendant's wife was that, as long as both defendant and his wife had been truthful with officers, there would be no reason to arrest her at that time. As to having the children taken away, the detective was clear that, as long as both he and CPS were satisfied that defendant's wife had been honest, and that she would protect the children, there would be no reason for the children to be taken away from her. In other words, as long as the detective and

12

CPS were convinced that defendant's wife had been honest with them and would be protective of the children, there was nothing that defendant could have said that would affect whether defendant's wife would be arrested, or whether CPS took the children away from defendant's wife.

As in *Howard*, the detective did not expressly or implicitly guarantee defendant that his wife would not be subsequently arrested or charged with a crime. The detective made no threats or promises, either express or implied, regarding defendant's wife. Furthermore, defendant's wife was being interviewed by the police as an important witness with knowledge of defendant's crimes, not as a threat to extract a confession from defendant.

Since the detective made no threats or promises regarding defendant's wife and family, we conclude that defendant's statements and subsequent confession were voluntary.

3. Under the Totality of Circumstances, the Detective's "Tough Talk" Does Not Render the Confession Involuntary

Lastly, defendant contends that his statements to the detective were elicited through the detective's "tough talk." We reject this contention.

Although "tough talk" is a factor that is considered, the court looks at the totality of the circumstances to determine whether a confession is involuntary. (*In re Shawn D.*, *supra*, 20 Cal.App.4th at p. 213.) This is because the court must determine whether """"the influences brought to bear upon the accused were "such as to overbear

13

petitioner's will to resist . . . ."'""" (*People v. McWhorter*, *supra*, 47 Cal.4th at p. 347.) In *In re Shawn D.*, the officer challenged the suspect to "be a man" by being truthful in the interrogation. Although the court held that the defendant's confession was involuntary based on the totality of the circumstances, it noted that the tough talk alone "[did] not render [the defendant's] confession involuntary." (*In re Shawn D.*, *supra*, at p. 213.) In *In re Shawn D.*, the court took into account the defendant's age, his unfamiliarity with the criminal process, and his fragile emotional state (including posttraumatic stress disorder), as well as the officers' repeated lies to the defendant, which included suggestions of leniency in exchange for a confession.

Similar to the "be a man" comment that the *In re Shawn D.* court determined was insufficient on its own, the detective here urged defendant "to own it now. You need to man the fuck up and deal with this." He later said "this is your chance to do the right thing. This is your chance to help your family. You just gotta own it." He also implored defendant "to tell me the truth about what happened" in order to help his family. The detective's tough talk was too brief and insubstantial to qualify as coercive, as it conveyed no threat of harm or promise of benefits in exchange for defendant's cooperation. Furthermore, there is no indication that defendant was in a fragile mental or emotional state, or that the detective misled or duped defendant into a confession.

Based on the totality of the circumstances, defendant's statements to the detective were voluntary, as the detective's "tough talk" was minimal and not a factor in overcoming defendant's free will.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.